### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO: 0:19-CV-61127

**JOEL HALL,**

  **Plaintiff,**

**vs.**

**FLORIDA EAST COAST RAILWAY**
**CORP., A CORPORATION,**

  **Defendant.**

                /

### COMPLAINT
### AND DEMAND FOR JURY TRIAL

Joel Hall, Plaintiff herein, files this Complaint against Florida East Coast Railway Corp., Defendant herein, and alleges as follows:

### PARTIES

1.  Plaintiff Joel Hall, an individual, resides in Miami-Dade County, Florida.

2.  Defendant, Florida East Coast Railway Corp., a Florida Corporation, has a principal place of business at 7411 Fullerton Street, Jacksonville in Duval County, Florida.

### JURISDICTION

3.  The action arises under 42 U.S.C. Section 2000e-2(a) as hereinafter more fully appears.

4.  This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

### NATURE OF ACTION

1

5.      This is an action under Title 42 U.S.C. Section 2000e-2(a) et. seq. as amended by the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race.

## CONDITIONS PRECEDENT

6.      All conditions precedent to jurisdiction have occurred or been complied with:  a charge of discrimination was filed with the Equal Employment Opportunity Commission within three-hundred days of the acts complained of herein and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

## FACTS

7.      Plaintiff Joel Hall ("Hall") is a black male.

8.      Hall was hired by Defendant Florida East Coast Railway Corp. ("FEC") as a welder in or about 2001.

9.      Hall worked without incident in his job from 2001 until approximately February 2017, when he was awarded a job location on the line between Miami and Jacksonville.

10.     After commencing work at his new location, Hall was subjected to different and less-than-favorable treatment based on his race.

11.     For example, Hall was told that welders were not able to work overtime hours, yet Hall observed that non-black welders were offered overtime shifts.

12.     Moreover, Hall was the only welder in his group who was not granted overtime hours to complete his work, but FEC insisted that Hall produce the same amount and level of work as his coworkers that were able to work overtime.

13.     Hall was given more difficult workloads in comparison to other, non-black employees and was told that he must continue performing his work, even if a train was blocking (partially or fully) the work space he needed to perform his job.

14.     Hall's materials and tools were removed from his work vehicle by FEC personnel without his permission, and he once observed that an oxygen tank in his work vehicle had been turned on, both meant to intimidate and/or harass Hall.

15.     During preapproved vacations and other times off work, Hall has been called up by FEC management and questioned about various aspects of his work performance.

16.     At one point, Hall was interrogated by his supervisor, Gerald Foster, a white individual, about a $5.00 charge on an FEC credit card, even though Hall had authority and permission to use the card.

17.     Hall was reprimanded by his non-black supervisor, Mr. Foster, for failing to work during a thunderstorm, even though FEC policy was that no work was to be performed when such weather conditions were present.

18.     Hall was reprimanded by the FEC Chief Engineer for using the company credit card to purchase safety glasses; yet a non-black individual purchased safety glasses with the company credit card and was not disciplined.

19.     After enduring what he perceived as blatant discrimination and disparate treatment based on his race at the hands of his non-black supervisors and coworkers, Hall reached out to his Union to complain of the harassment.

20.     Several days later, on or about June 1, 2017, Hall was called by a supervisor, Ben Ortegon, and asked to give a statement regarding the maintenance of his company vehicle.

21.     Hall responded that he had recommended his vehicle receive service.

22.     Thereafter, FEC presented Hall with a letter to sign (which Hall did not write) stating that Hall admitted he did not take his vehicle in to be serviced in violation of FEC directives.

23.     An investigation occurred and FEC suspended Hall for approximately 1 month.

24.     A non-black mechanic that worked with Hall was accused of much more egregious acts than Hall and was treated more favorably.

25.     While Hall was on suspension, his truck was serviced.

26.     When Hall returned to work and retrieved his truck, he was startled to learn that a dead animal had been placed inside one of the tool boxes on the truck.

27.     Hall also observed that the original reason for the service request was still present - FEC had failed to fix the mechanical issue over which they suspended Hall.

28.     While Hall was suspended in June, he reached out to his Union representative.

29.     Hall then filed a complaint with the EEOC on or about July 20, 2017 for the above described harassment, discrimination and retaliation on the part of FEC.

30.     After filing with the EEOC, Hall was subjected to even more discrimination by his superiors at FEC.

31.     For example, Hall's hours and schedule have been altered to hours that are not in compliance with Hall's union agreement.

32.     According to the union agreement, if welders are scheduled to work five straight days, they are entitled to weekends off.

33.     Hall was scheduled to work Saturday to Wednesday.

34.     When Hall approached FEC superiors about having to work on weekends in violation of the union agreement, he was informed that his job had been abolished.

35.     Hall then began working as a machine operator on a regulator machine.

36.     Three new jobs were posted on FEC's bulletin board for machine operators.

37.     Hall applied for all three machine operator positions and was initially awarded one for the high-speed regulator machine.

38.     Shortly thereafter, and without reason, FEC rescinded Hall's award of the machine operator position and the job was awarded to a candidate that did not meet the qualifications of the position.

39.     It is well-known that FEC promotes its employees based on seniority and based on the employee's qualifications.

40.     At the time FEC posted the machine operator job, Hall had 10 years' experience, had 16 years with FEC and was well-qualified.

41.     The candidate that was ultimately chosen for the machine operator position had only two years and no experience as a machine operator.

42.     With his last job abolished and him being passed over for the machine operator position, Hall was forced to take a demotion to trackman just to keep his employment.

43.     A grapple truck position opened up and Hall successfully bid on the job.  However, shortly after taking the new position, the verbal harassment and racial targeting continued by his employer.

44.     As an example, Hall had a personal emergency on or about December 8, 2017 that he had to attend to.

45.     Hall informed his supervisor, John Thomas, that he needed a week off due to the emergency.

46.     The next day, he received a forward of the text he sent to Mr. Thomas but heard nothing else that day.

47.     Shortly thereafter, FEC demanded that Hall provided proof of his "emergency" or he would be considered absent without permission.

48.     Hall contacted his union representative to get assistance in dealing with his emergency and FEC's demands – however the union representative never called Hall back.

49.     When Hall returned to work on December 18, 2017, and proceeded to go to his duties, and worked on December 19th without incident.

50.     On or about December 20, FEC Supervisor Thomas handed Hall a letter stating that he was being suspended until further notice.

51.     Hall then provided a note from his wife's doctor detailing the nature of and need for the emergency, but FEC refused to accept or honor the doctor's note.

52.     After a brief "investigation", FEC informed Hall that he had been found "guilty", apparently of being out due to an emergency with his wife's health.

53.     Hall was given a choice – he could either sign the letter admitting that he was in violation of company policy and waive any right to appeal that decision, or he would not be permitted to return to work.

54.     FEC gave Hall until February 13, 2018 to sign the letter and return to work but doing so would have forced Hall to admit that he violated company policy when he knows he did not.

55.     Prior to February 13, 2018 and before Hall responded to FEC's letter, FEC made Hall's job available for biding by other FEC employees.

56.     Rather than give up his appeal rights or admit to wrongdoing that he did not commit, Hall did not return to work, but was rather constructively discharged by FEC.

57.     As a direct and proximate result of the actions by Defendant, Plaintiff suffered damages in an amount to be determined at trial.

## COUNT I - RACE DISCRIMINATION

Plaintiff adopts by reference, as if set out fully and completely in this Count, the following statements of this Complaint:  Paragraphs 1 through 57.

58.     The Plaintiff is a black male who possessed the experience, skills and requisite qualifications to perform his job duties.

59.     Defendant, Florida East Coast Railway Corp., intentionally engaged in unlawful employment practices involving Plaintiff because of his race.

60.     The Plaintiff was subjected to unlawful disparate treatment, in the workplace, in view of the fact that, "comparator" employee(s); who committed the same or similar acts in the workplace; were not disciplined, and Plaintiff was disciplined, threatened, harassed and ultimately terminated for these actions, whereas, in contrast, comparator non-black employees were not subjected to adverse employment actions, for the same or similar conduct in the workplace.

61.     This unlawful discrimination was in the form of disparate treatment such as: being given more difficult workloads, being prohibited from working overtime, being reprimanded for not working during a thunderstorm, using the company credit card, being suspended, his job being abolished upon returning from suspension, having his schedule altered without notice ,being scheduled to work weekends, being passed over promotion and his eventual discharge.

62.     Defendant, Florida East Coast Railway Corp., discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive him of any employment opportunity or adversely affect his status because of Plaintiff's race in violation of 42 U.S.C. Section 2000e-2(a).

63.     Defendant, Florida East Coast Railway Corp., classified Plaintiff in a manner that deprived him of an equal employment opportunity that was provided to employees similarly situated in violation of 42 U.S.C. Section 2000e-2(a).

64.     As a direct and proximate cause of FEC's actions, Hall has been damaged in an amount to be determined at trial.

Wherefore, Plaintiff seeks an award of Hall's back pay and benefits; awarding punitive damages, and for an award of Hall's attorney fees and costs and for such other relief as the Court may grant.

## COUNT II - HARASSMENT

Plaintiff adopts by reference, as if set out fully and completely in this Count, the following statements of this Complaint:  Paragraphs 1 through 57.

65.     The Plaintiff is a black male who possessed the experience, skills and requisite qualifications to perform his job duties.

66.     Defendant, Florida East Coast Railway Corp., intentionally engaged in unlawful employment practices involving Plaintiff because of his race.

67.     This unlawful discrimination was in the form of harassment such as: being given more difficult workloads, being prohibited from working overtime, being reprimanded for not working during a thunderstorm, using the company credit card, being suspended, having a dead animal placed in his truck, his job being abolished upon returning from suspension, having his schedule altered without notice, being scheduled to work weekends, being passed over promotion and his eventual constructive discharge.

68.     Defendant, Florida East Coast Railway Corp., discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited,

segregated or classified Plaintiff in a manner that would deprive or tend to deprive him of any

employment opportunity or adversely affect his status because of Plaintiff's race in violation of 42

U.S.C. Section 2000e-2(a).

69.     Defendant, Florida East Coast Railway Corp., classified Plaintiff in a manner that

deprived him of an equal employment opportunity that was provided to employees similarly

situated in violation of 42 U.S.C. Section 2000e-2(a).

70.     As a direct and proximate cause of FEC's actions, Hall has been damaged in an

amount to be determined at trial.

Wherefore, Plaintiff seeks an award of Hall's back pay and benefits; awarding

punitive damages, and for an award of Hall's attorney fees and costs and for such other relief as

the Court may grant.

## COUNT III - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff adopts by reference, as if set out fully and completely in this Count, the following

statements of this Complaint:  Paragraphs 1 through 57.

71.     Defendant, Florida East Coast Railway Corp., intentionally or recklessly subjected

Hall to extreme and outrageous behavior, including placing and leaving a large dead animal in

Hall's truck when he was suspended.  The truck was under the dominion and control of FEC when

this occurred.  This was intended to intimidate the Plaintiff.  Defendant's conduct was extreme and

outrageous and proximately caused Plaintiff severe emotional distress.

72.     The conduct of Defendant, Florida East Coast Railway Corp., was extreme,

outrageous and offensive when measured by the standard of the objective, reasonable person of

ordinary sensibilities.

73.     Further, Defendant, Florida East Coast Railway Corp. knew or should have known that these acts would result in severe emotional distress to the Plaintiff.

74.     The actions of Defendant, Florida East Coast Railway Corp. resulted in the Plaintiff suffering severe emotional distress, including, but not limited to anxiety, depression and feelings of isolation.

75.     Further, Defendant, Florida East Coast Railway Corp.'s actions, either directly or indirectly, caused injuries to the Plaintiff as described above.

76.     These losses are either permanent or continuing, and Plaintiff will suffer these losses in the future.

Wherefore, Plaintiff seeks an award of Hall's back pay and benefits; awarding punitive damages, and for an award of Hall's attorney fees and costs and for such other relief as the Court may grant.

## COUNT IV - RETALIATION

Plaintiff adopts by reference, as if set out fully and completely in this Count, the following statements of this Complaint:  Paragraphs 1 through 57.

77.     Plaintiff alleges that Florida East Coast Railway Corp., instituted a campaign of retaliation which included harassment, selective enforcement of the company's rules, discriminatory work practices, demotions, and ultimately constructive discharge.

78.     As a result of these complaints the Defendant unlawfully retaliated against the Plaintiff in the form of race discrimination as well as in the form of adverse employment such as: suspension, the abolishment of his job, being passed over for promotion, another suspension and ultimately his constructive discharge.

79.     This retaliation was and is due to Plaintiff exercising Plaintiff's rights by opposing a discriminatory practice and making a charge with the EEOC.  Plaintiff suffered damages for which Plaintiff herein sues.

Wherefore, Plaintiff seeks an award of Hall's back pay and benefits; awarding punitive damages, and for an award of Hall's attorney fees and costs and for such other relief as the Court may grant.

## COUNT V - CONSTRUCTIVE DISCHARGE

Plaintiff adopts by reference, as if set out fully and completely in this Count, the following statements of this Complaint:  Paragraphs 1 through 57.

80.     Due to the ongoing abuse of FEC as well as his refusal to admit to wrongdoing he did not commit, Hall did not return to work and was constructively discharged.

81.     As a direct and proximate cause of FEC's actions, Hall has been damaged in an amount to be determined at trial.

Wherefore, Plaintiff seeks an award of Hall's back pay and benefits; awarding punitive damages, and for an award of Hall's attorney fees and costs and for such other relief as the Court may grant.

## ATTORNEY'S FEES

Plaintiff has employed undersigned counsel for representation in this action and has agreed to pay a reasonable attorney fee to his attorney.  Plaintiff is entitled to recover reasonable attorney's fees incurred in connection with this action pursuant to, inter alia, 42 U.S.C. Section 2000e-5(k)  .

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial of this action by jury.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a true copy of the foregoing was provided via electronic mail to Lori K. Mans, Esq., (LMans@Constangy.com), attorney for Florida East Coast Railway Corp., on this 3rd day of May 2019.

**JENKINS LAW OFFICES P.L.**
12 Southeast 7th Street | Suite 712
Fort Lauderdale, Florida 33301
Tel.  (954) 880-1199
Fax. (954) 880-1198
sjenkins@jsjlawfirm.com

By: */s/ J. Spencer Jenkins*
     **J. Spencer Jenkins, Esq.**
     Florida Bar No. 100549

12